UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                  Case No. 8:14-cr-00185-T-23MAP

ALI EL KHATEEB,
ALA EDDIN M. KHALED,
GEORGE CHALLITA, and
ANWAR GABER,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Ali El Khateeb and George Challita move to suppress evidence seized pursuant to search warrants that were based on the same or similar affidavits.[1] Almost all their complaints about these affidavits are alike – each lacked probable cause, each included stale information, and each omitted material information as to whether the scientific community, and the Drug Enforcement Administration in particular, considered AM-2201 an analogue of JWH-018. Having considered their arguments and the government's responses, I recommend the Defendants' motions be denied.

    *A. Warrants*

Four warrants are at issue. Three pertain to separate commercial storage units in Orange, California that a magistrate judge in the Central District of California approved at the same time after

---

[1] On March 23, 2015, the district judge stayed this case pending the Supreme Court's ruling in *McFadden v. United States*, No. 14-378 (doc. 239). That case was decided on June 18, 2015, and on June 25, 2015, the district judge vacated the stay in this case (doc. 276). I held a status conference on pending motions on August 4, 2015, during which the parties concurred that the motions to suppress are ripe for the Court's consideration.

reviewing an affidavit applicable to all three. Both Challita and El Khateeb attack these searches.[2]

About fourteen months after the California warrants, a magistrate judge in the Tampa division authorized a warrant for electronically stored data housed in an AOL email account that El Khateeb claims he maintained. Only El Khateeb moves to suppress that evidence.[3] The Tampa and California affidavits are similar in factual content, although each has a different affiant and the California affidavit predates the Tampa affidavit by more than a year. Any dissimilarities between the affidavits are noted.

*1. the storage units*

On July 23, 2012, DEA agent Jeffrey T. Cottet presented an application and affidavit to a magistrate judge in the Central District of California for warrants to search three storage units in Orange, California (all within close proximity of the other) and to seize evidence for violations of 21 U.S.C. §§ 841(a) and 846 associated with the distribution of smokable synthetic cannabinoid products, specifically JWH-018 and analogues AM-2201, UR-144, and XLR11. These compounds and their like mimic marijuana's active ingredient (THC) but often with more severe consequences – paranoia, panic attacks, increased heart rate, and increased blood pressure. *See* doc. 212-1 (*i.e.*, search warrant affidavit; hereinafter "affidavit") at ¶ 10. JWH-018 became a Schedule I controlled substance on March 1, 2011. 21 C.F.R. § 1308.11(g)(8); 76 Fed.Reg. 11075-01. But other compounds have surfaced, a fact that is hardly surprising. As Cottet explained: "In an attempt to circumvent laws making the possession and distribution of specific drugs illegal, drug traffickers

---

[2] Challita's motion to suppress evidence seized from storage units is at doc. 182, which El Khateeb joined (doc. 184). The government's response to those motions is at doc. 212.

[3] El Khateeb's motion to suppress the email account is at doc. 177; the government's response is at doc. 211.

have historically sought to purchase or produce substances that have a slightly different chemical structure than the listed drug, but that produce the same effect on the human body when ingested. To deal these ever changing substances, Congress enacted the Controlled Substance Analogue Enforcement Act of 1986." *See* affidavit at ¶ 11.[4] AM-2201, UR-144, and XLR11, stated the agent, are analogues of JWH-018 and thus prohibited under the Analogue Act. *Id.* at ¶ 15.[5]

In April 2012, more than a year after JWH-018's listing, Hillsborough County Sheriff detectives visited Defendant Challita at a warehouse in Tampa suspected of being used in the manufacture of synthetic cannabinoids under the name "Wild Incense." Challita, who identified himself as the manager of Wild Incense, acknowledged that Wild Incense had produced products containing AM-2201 in the past, but when Florida banned AM-2201, all such items were shipped to California.[6] Now, said Challita, the business used a different compound; one called UR-144. In their walk around the premises, the detectives spotted items confirming what they had previously suspected: a brown leafy substance in packages labeled "Scooby Snax," a marijuana pipe, and a bowl with burnt residue. Despite his comment that the business had shipped all AM-2201 products to California, Challita admitted that Scooby Snax contained AM-2201. The Detectives seized some samples which later tested positive for AM-2201. *Id.* at ¶¶ 18, 19, 21.

In May and June 2012, an informant under the direction of the DEA met with Defendant

---

[4] The agent's information is not revelatory. *See United States v. Fedida*, 942 F.Supp.2d 1270 (M.D. Fla. 2013) (outlining the Analogue Act's legislative history).

[5] Challita and El Khateeb maintain AM-2201 is not an analogue of JWH-018, and their arguments for applying the exclusionary rule are largely premised on that contention.

[6] AM-2201 was added as a controlled substance on Florida's Comprehensive Drug Abuse Prevention Act (Fla. Stat. § 893.01, *et seq*.) effective March 23, 2012. *See* Fla. Stat. § 893.03(c)(138); Laws of Florida, Ch. 2012-23, Committee Substitute for House Bill No. 1175.

Alaeddin Khaled, whom Challita had previously identified to detectives as an owner of Wild Incense, and then later with Khaled's brother.[7] Both meetings occurred at a smoke shop in Temple Terrace that Khaled apparently owned or managed. During the first meeting, one that DEA recorded, Khaled reiterated that Wild Incense products had been shipped to California. On the informant's next visit, Khaled's brother confirmed the California connection and provided the informant samples that later tested positive for UR-144 and XLR11. *Id.* at ¶¶ 22-26.

In July 2012, DEA discovered online a site for "Joker Wild Incense" located at 644 N. Poplar Street, Orange, California, which California business records traced to Challita, who registered the business about a month before detectives had visited the Tampa warehouse.[8] On July 10, surveilling agents observed activity that corresponded with the distribution of synthetic cannabinoids occurring in plain view between the two units and a third unit nearby (634 N. Poplar Street, Suite F ("Subject Premises #3")). Cottet applied for and secured the warrant thirteen days later.[9]

    *2. the email account*

On October 4, 2013, Magistrate Judge Porcelli authorized a warrant directed to an AOL, Inc. email account (alielkhateeb@aol.com) authorizing the seizure of documents pertaining to the controlled substance trade. The supporting affidavit reported the previous details about the Tampa warehouse encounter and added information discovered after the California searches. For example,

---

[7] Khaled did not join the motion to suppress the searches of the storage units.

[8] This is the address of two of the storage units that are the subject of the motion to suppress, further identified in the affidavit and warrant as Suite N ("Subject Premises #1") and Suite M ("Subject Premises #2").

[9] I mention this brief time span because Challita erroneously claims the facts in the warrant were stale: "At least *fifteen months* elapsed between the events in the search warrant affidavit and the date the warrant was sought." *See* doc. 182 at 10 (emphasis added).

the Tampa affiant (DEA agent Duralia) explained that in September 2013, he interviewed Defendant Khaled, who admitted to wholesaling "incense" that contained AM-2201, to purchasing multi-kilogram quantities of AM-2201 from a Chinese source and from Mountain Industries, to employing El Khateeb as his primary sales representative, and to being associated in some vague manner with "Baba Wholesale." *See* doc. 177-2 at ¶¶ 30-33.

A representative of Mountain Industries confirmed that an "Ali" from "Baba Wholesale," a/k/a "Ali Baba Wholesale" had ordered AM-2201 over the past few years from Mountain Industries but in an amount that far exceeded what Khaled had stated – in excess of 100 kilograms of AM-2201. Mountain Industries provided its email correspondence with the targeted account, including a Florida House of Representatives staff analysis of House Bill 39 pertaining to synthetic cannabis (explaining the basis for Challita's comments to detectives in April 2012) (*see also* fn. 5, *supra*). *Id.* at ¶¶ 35-40. All this correspondence, at least that the affidavit references, dates to mid-2011 (early May to early August 2011). *Id.* at ¶ 35.

   B. *Discussion*

Challita's and El Khateeb's Fourth Amendment complaints are essentially intertwined premises: AM-2201 did not become a Schedule I substance until July 9, 2012; AM-2201 is not an analogue of JWH-018; scientists can debate whether AM-2201 is an analogue; the applicable affidavit fails to show probable cause for their *mens rea*; the government failed to give notice to the public that AM-2201 was illegal; and because all or some of this information would have negated probable cause, the affiants should have added any or all of the omissions to the affidavit. Both argue that the facts in the affidavits were stale, and El Khateeb complains that the email warrant was overbroad. I find these claims unpersuasive.

The analytical starting point of course is the Fourth Amendment, which requires that warrants issue only upon probable cause.[10] When presented with an application for a warrant, the reviewing judge's task is simple and straightforward: "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The concept is "fluid" and requires assessing the probabilities in particular factual contexts while allowing the presenting officer to make "common-sense conclusions about human behavior." *Id.* at 231-232. But the examination of the probabilities "does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown,* 460 U.S. 730, 742 (1983).

As for this Court's review, the warrant and its supporting affidavit are presumptively valid; the supporting affidavit should not to be examined in a hypertechnical manner; and a realistic and

---

[10] To invoke the exclusionary rule, each Defendant must have a subjective and reasonable expectation of privacy in the area searched or in the evidence seized. *Minnesota v. Carter*, 525 U.S. 83, 91 (1998). And the inquiry for evaluating these expectations is fact-specific. *Coffin v. Brandau*, 642 F.3d 999, 1015-16 (11th Cir. 2011). Because the government does not challenge either Defendant's standing to contest any of the searches, the Court presumes each Defendant has a Fourth Amendment right worthy of protection. *United States v. Kapperman*, 764 F.2d 786, 791 n.6 (11th Cir. 1985) (because the government failed to raise the question, the court need not address standing). Having said that, my view is that neither Defendant has standing to challenge any search of a commercial storage unit. *See Carter*, 523 U.S. at 88 (the expectation of privacy for a commercial place is less than that for an individual's home); *United States v. Thompson*, 928 F.2d 1060, 1064 (11th Cir. 1991) (inquiry is whether the defendant manifested a subjective expectation of privacy in the objects of the challenged search and that expectation is one that society if prepared to recognize as legitimate and reasonable). Similarly, my view is that El Khateeb fails to satisfy his privacy expectations for the email account. Although he says in his motion that the account is his, he fails to support such a claim by affidavit and the search warrant affidavit contradicts his claim. AOL records list Tareg Aranda as the subscriber for alielkhateeb@aol.com (doc. 177-2 at ¶ 42). *See United States v. Warshank*, 631 F.3d 266, 288 (6th Cir. 2010) (subscriber enjoys a reasonable expectation of privacy).

commonsense approach is to be used, with "great deference" being given to authorizing judge's probable cause determination. *Franks v. Delaware,* 438 U.S. 154, 171 (1978); *Gates*, 462 U.S. at 236; *United States v. Ventresca*, 380 U.S. 102, 109 (1965); *United States v. Leon,* 468 U.S. 897, 914 (1984). Accordingly, even the doubtful or marginal search under a warrant may be sustainable where one without a warrant would fail. *Leon,* 462 U.S. at 914; *Ventresca,* 380 U.S. at 106. And unlike for warantless searches, which demand the government bear the burden for satisfying the Fourth Amendment intrusion, Challita and El Khateeb must show invalidity here. *United States v. Osborne,* 630 F.2d 274, 377 (5th Cir. 1980).[11] That invalidity bar is noticeably high because each Defendant claims the agent recklessly misled the magistrate judge. *Franks* requires the Defendants make a "substantial preliminary showing" the agent made a "false statement knowingly and intentionally, or with reckless disregard for the truth." *Franks*, 438 U.S. at 155.[12] A conclusory allegation is insufficient. *Id.* at 171. Instead, the Defendants should point to the exact portions of the application they challenge, provide a statement of reasons for their contentions, and supply an offer of proof supporting their grounds or give some satisfactory explanation for not doing so. *Id.*

    *1. omissions*

Neither Defendant meets the substantial prerequisites for a *Franks* hearing. Their claim that

---

[11] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions the former Fifth Circuit rendered prior to October 1, 1981.

[12] A "reckless disregard for the truth" includes instances where the affiant "should have recognized the error, or at least harbored serious doubts" about his representations. *United States v. Kirk,* 781 F.2d 1498, 1502-03 (11th Cir. 1986). But negligence or innocent mistakes do not violate the Fourth Amendment. *Madiwale v. Savaiko,* 117 F.3d 1321, 1326 (11th Cir. 1997). Although *Franks* dealt with false statements, the Eleventh Circuit also applies its reasoning to omissions. *Madiwale,* 117 F.3d at 1326-27.

AM-2201 did not become a Schedule I substance until July 9, 2012, evades the government's claim that the Analogue Act covers the substance. Their argument that some scientists may disagree on whether AM-2201 is an analogue of JWH-018 hardly means that they make the substantial preliminary showing that either agent knew about any scientific disagreement or that either agent recklessly omitted the information even if privy to the debate.[13] Their other claims – the affidavits lacked probable cause as to their *mens rea* and the government should have provided them with notice that AM-2201 was illegal (a claim for which neither cites legal authority) – have no relevance whatsoever to the probable cause determination that agents would find AM-2201 and the *other* targeted substances at the storage units or evidence of a drug conspiracy (such as in documents electronically stored in the email account). And a Defendant's statement that he lacks the requisite *mens rea* is self-serving and best made under oath on another day.

    2. *staleness*

Both Defendants claim the affidavits are stale, although Challita's motion targeting the storage units simply copies El Khateeb's motion targeting the emails: "At least fifteen months elapsed between the events in the search warrant affidavit and the date the warrant was sought." *Compare* El Khateeb's motion (doc. 177 at 12) with Challita's later filed motion (doc. 182 at 10). Irrespective, neither claim has merit as all the affidavits presented timely information. As already noted, the California warrants followed thirteen days after the surveillance (not the fifteen months Challita recites). El Khateeb's email warrant occurred a month or so after DEA last interviewed Mountain Industries's representative, although, to be fair, El Khateeb's main complaint is that any

---

[13] The determination of whether AM-2201 is a controlled substance by application of the Analogue Act is a question for the trier-of-fact. *United States v. Brown*, 415 F.3d 1257 (11th Cir. 2005).

activity between Baba Wholesale and Mountain Industries ceased in early August 2011, more than two years before the email warrant. But two years is hardly relevant in the digital age. The staleness concept is just a commonsensical metric for evaluating probable cause in a search warrant application – the supporting information must be timely in order to believe that a fair probability exists for finding particular evidence at a particular place. *United States v. Bervaldi*, 226 F.3d 1256, 1264-65 (11th Cir. 2000). Digital files, particularly those stored with an email service provider, are qualitatively different. As the affiant informed the magistrate judge, the emails would remain on AOL's servers indefinitely unless the subscriber had deleted them or the subscriber's mailbox had exceeded its limits.

### 3. *general warrant*

El Khateeb labels the email warrant a general warrant – too overbroad and insufficiently particularized to satisfy the Fourth Amendment. *United States v. Travers*, 233 F.3d 1327, 1329 (11th Cir. 2000) ("A warrant which fails to sufficiently particularize the place to be searched or the things to be seized is unconstitutionally over broad."); *see* Fed. Crim. P. 41(e)(2)(A) ("the warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned"). If probable cause existed "at all," he concedes it only pertained to the emails between April 2011 and July 2011. Doc. 177 at 18. Despite this concession, he nonetheless extrapolates that the warrant's failure to specify a date range renders it fatally overbroad and fatally defective for the seizure of any emails. He offers no authority for this point.

The warrant, which must be read reasonably, limits the seizure of electronic information to that connected with the possession, receipt, and distribution of controlled substances. That "nexus"

satisfies the practical realities "that enable the searcher to ascertain and identify things authorized to be seized." *United States v. Smith*, 918 F.2d 1501, 1507-08 (11th Cir. 1990) (approving similar language for documents pertaining to narcotics trafficking). In short, the warrant's description as to the items to be seized is not too overbroad and too unparticularized to run afoul of the Fourth Amendment.

   C. Conclusion

   For the reasons stated, I recommend the motions to suppress (docs. 182 and 184) be DENIED.

   IT IS SO REPORTED at Tampa, Florida on August 4, 2015.

*[signature]*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE


### NOTICE TO PARTIES

   Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).


cc:   Hon. Steven D. Merryday
      Counsel of Record